In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-2410

YANCEY LAMARR WHITE,

*Petitioner-Appellee,*

*v.*

JOSEPH SCIBANA,

*Respondent-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03 C 0581 C—**Barbara B. Crabb**, *Chief Judge.*

_____

ARGUED SEPTEMBER 9, 2004—DECIDED DECEMBER 2, 2004

_____

Before EASTERBROOK, EVANS and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* **This appeal presents a question of statutory interpretation involving the calculation of "good-time credit" for prisoners serving federal sentences. Under the good-time statute, an eligible prisoner may receive credit "beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term," subject to the Bureau of Prisons' determination that "during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1). Yancey White's behavior has been exemplary in all but one**

of his years behind bars: after serving eight years of his ten-year sentence for distribution of cocaine base, he is entitled to all but ten days of the good-time credit allowed him under the statute. The question is, how much time is that?

The Bureau of Prisons interprets the good-time statute as allowing an award of up to fifty-four days of credit for each year the inmate *actually serves in prison*. The term an inmate actually serves is not the term imposed by the court but something less; annual good-time awards operate to incrementally reduce the term of imprisonment imposed in the sentence. The statutory good-time calculation is thus (according to the Bureau's interpretation) not fifty-four days times the number of years *imposed* but fifty-four days for each year actually *served*. According to this method of calculation, the Bureau plans to release White on March 3, 2005.

White contends that the good-time statute unambiguously entitles inmates to fifty-four days of credit for each year of the *sentence imposed*, minus any deductions for disciplinary violations. According to this method of calculation, White believes he is entitled to be released on December 23, 2004. He petitioned for relief under 18 U.S.C. § 2241. The district court agreed with White's interpretation of § 3624(b)(1) and ordered his release date recalculated. *White v. Scibana*, 314 F. Supp. 2d 834 (W.D. Wis. 2004). We reverse.

## I. Background

In August 1996 Yancey White was sentenced by the United States District Court for the Southern District of Illinois to 120 months in prison for three counts of distributing cocaine base. He is serving that sentence at the Federal Correctional Institution in Oxford, Wisconsin. In March 2003 White filed a request for administrative remedy asserting that his good-time credit had been miscalculated. He claimed entitlement to fifty-four days of good-time credit

No. 04-2410                                                3

for each year of the ten-year sentence imposed by the court, or a total of 540 days. The warden denied the request, citing § 3624(b) and explaining that the statute allowed inmates to earn fifty-four days of good conduct time for each year served, not each year of the sentence imposed. The warden told White that because he would not be in service of the full ten-year sentence, his good-time credit could not be calculated by simply multiplying fifty-four by ten. Applying a formula the Bureau uses to calculate good-time credit on the basis of time served, the warden informed White that he was entitled to 470 days of good-time credit (later reduced by ten days for a disciplinary infraction). White appealed to the regional and central offices of the Bureau, both of which denied relief.

White filed a habeas corpus petition under 28 U.S.C. § 2241 in the United States District Court for the Western District of Wisconsin. The district court granted relief, concluding that "§ 3624(b) is unambiguous: 'term of imprisonment' means 'sentence imposed.' Therefore, the bureau must calculate an inmate's good conduct time on the basis of his sentence rather than on the time he has served." *White*, 314 F. Supp. 2d at 836. The court ordered Warden Joseph Scibana to recalculate White's release date. The warden appealed.

## II. Discussion

The federal prisoner "good-time" statute provides, in pertinent part:

(a) Date of release.—A prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided in subsection (b).

(b) Credit toward service of sentence for satisfactory behavior.—

    (1) [A] prisoner who is serving a term of impris-
onment of more than 1 year other than a term of im-
prisonment for the duration of the prisoner's life, *may
receive credit toward the service of the prisoner's sentence,
beyond the time served, of up to 54 days at the end of
each year of the prisoner's term of imprisonment, begin-
ning at the end of the first year of the term*, subject to
determination by the Bureau of Prisons that, during that
year, the prisoner has displayed exemplary compliance
with institutional disciplinary regulations.

    . . . .

*[C]redit for the last year or portion of a year of the term
of imprisonment shall be prorated and credited within
the last six weeks of the sentence.*

18 U.S.C. § 3624 (emphasis added).

    The Bureau has promulgated a rule reflecting its inter-
pretation of the good-time statute: "[p]ursuant to 18 U.S.C.
§ 3624(b) . . . an inmate earns 54 days credit toward service
of sentence (good conduct time credit) *for each year served.*"
28 C.F.R. § 523.20 (emphasis added). The Bureau has also
issued, as part of its Sentence Computation Manual,
Program Statement 5880.28, which depicts a formula ad-
dressing the problem of calculating good-time credit on
sentences of a year and a day and provides examples of the
partial-year proration at the end of a sentence.

    The Bureau's proration and year-and-a-day formula is
based on the premise that for every day a prisoner serves on
good behavior, he may receive a certain amount of credit
toward the service of his sentence, up to a total of fifty-four
days for each full year. Thus, under the Bureau's formula,
a prisoner earns .148 days' credit for each day served on
good behavior (54 ÷ 365 = .148), and for ease of administra-
tion the credit is awarded only in whole day amounts.
Recognizing that most sentences will end in a partial year,
the Bureau's formula provides that the maximum available

credit for that partial year must be such that the number of days actually served will entitle the prisoner (on the .148-per-day basis) to a credit that when added to the time served equals the time remaining on the sentence.[1]

When an agency interprets a statute it administers, judicial review is normally deferential. "We have long since recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 844 (1984). But the threshold question before deferential review is triggered is "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

Not all agency interpretations of ambiguous statutes are entitled to full *Chevron* deference; some are treated as persuasive only, based upon the form, content, circumstances, and reflected expertise of the interpretation. *United States v. Mead Corp.*, 533 U.S. 218, 227-28, 238 (2001), discussing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Full *Chevron* deference is limited to cases in which "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority," as when the agency engages in

---

[1] As applied to a model inmate serving a sentence of a year and a day, the formula results in an anticipated release at day 319. On that day, the inmate will have earned forty-seven days of good time (319 x .148 = 47.2), and 47 + 319 = 366, or the full year-and-a-day sentence. BOP Program Statement 5880.28 at 1-45.

adjudication or notice-and-comment rulemaking. *Mead*, 533 U.S. at 227; *U.S. Freightways Corp. v. Comm'r. of Internal Revenue*, 270 F.3d 1137, 1141 (7th Cir. 2001).

Other agency interpretations issued pursuant to comparable authority and procedure may also claim *Chevron* deference, *see Mead*, 533 U.S. at 230-31; *Krzalic v. Republic Title Co.*, 314 F.3d 875, 879 (7th Cir. 2002), but neither the Supreme Court nor this court has clarified the outer limits of the universe of less formal agency interpretations that might qualify. We need not attempt to do so here (and the issue of lesser deference under *Mead-Skidmore* does not come into play) because the Bureau's interpretation of the good-time statute is embodied in 28 C.F.R. § 523.20, adopted pursuant to notice-and-comment rulemaking. *See* 62 Fed. Reg. 50,786 (Sept. 26, 1997). The Bureau's discretion to resolve ambiguities in the good-time statute is implicit in its statutory authority to determine and award good time and release prisoners when their sentences, as adjusted by the Bureau for good-time credit, have expired. 18 U.S.C. §§ 3624(a), (b). The Bureau's interpretation of § 3624(b) is therefore entitled to full *Chevron* deference.[2]

But first there is the question of whether the statute is clear. The district court and the parties have focused primarily on the meaning of the statutory phrase "term of imprisonment." The phrase appears several times in § 3624. In subsection (a) the statute says that the Bureau shall release a prisoner "on the expiration of the prisoner's term of imprisonment, less any time credited" under subsection

---

[2] The formula contained in Program Statement 5880.28 is premised upon the Bureau's position that 18 U.S.C. § 3624(b) allows fifty-four days of good-time credit for each year served. As we have noted, the Bureau's "time served"—as opposed to "sentence imposed"—interpretation of the good-time statute is contained in 28 C.F.R. § 523.20. Because the Program Statement is consistent with the regulation, we do not further address the Program Statement.

No. 04-2410                                                         7

(b). The phrase "term of imprisonment" as used in subsec-
tion (a) must refer to the expiration of the *sentence imposed*,
since it is axiomatic that a prisoner is released when he has
served out his sentence. Similarly, in subsection (b), the
statute provides that a prisoner is eligible for good-time
credit if he is "serving a term of imprisonment of more than
1 year," other than a term of life imprisonment. In this part
of the statute "term of imprisonment" must also refer to the
sentence because the Bureau has to determine whether a
prisoner is eligible for the credit on the first day he arrives
in prison. Prisoners sentenced to terms of slightly more
than one year may or may not spend one calendar year in
prison, depending on how much good-time credit they
ultimately receive. If "term of imprisonment" here means
time served, then an inmate who initially would be eligible
for the credit because his sentence was, say, 366 days,
would become ineligible once the credit was taken into
account.

   But the specific use of the phrase "term of imprisonment"
at issue here—in the part of the statute that describes how
good-time credit is awarded—appears *not* to refer to the
sentence imposed. Subsection (b) provides that a prisoner
"may receive" good-time credit "beyond the time served, of
up to 54 days at the end of each year of the prisoner's term
of imprisonment," subject to the Bureau's determination
that the prisoner's behavior during that year has been ex-
emplary. The statute thus establishes a process of awarding
credit at the end of each year of imprisonment based on a
review of the prisoner's behavior during that year, a process
that would be undermined if "term of imprisonment" means
"sentence imposed." This is because the accumulation of
good-time credit reduces the amount of time a prisoner will
ultimately spend in prison, sometimes (as in White's case),
by more than an entire year. The Bureau cannot evaluate
a prisoner's behavior and award credit for good conduct if
the prisoner is not still in prison.

As we have noted, the statute anticipates the problem of a partial year at the end of a sentence by providing for proration of the credit for the partial year and awarding it in the last six weeks of the sentence. 18 U.S.C. § 3624(b)(1). But the Bureau cannot predict precisely the length of the partial year at the end of a prisoner's sentence when he first sets foot in prison, for everything depends on whether good time is awarded at the end of each year. Thus, if "term of imprisonment" refers to the sentence imposed, it becomes impossible to award the credit based on an annual year-end assessment of the prisoner's behavior. And such retrospective annual assessment and award of credit appears to be at the core of what the good-time statute is all about.[3] To interpret "term of imprisonment" as "sentence imposed" for purposes of awarding good-time credit would entitle an inmate to receive credit for good conduct in prison for time—perhaps several years of time—that he was not in prison.

---

[3] The warden points to the language of the prior good-time statute to emphasize the retrospective nature of good-time awards under the current statute. Congress adopted 18 U.S.C. § 3624 as part of the Comprehensive Crime Control Act of 1984, effective November 1, 1987. Its predecessor, 18 U.S.C. § 4161, provided that each prisoner "shall be entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run." The amount of the credit varied based upon the length of the sentence, ranging from five days a month for a sentence at the low end (a sentence of six months to a year) to ten days a month for a sentence of ten years or more. A companion statute, 18 U.S.C. § 4165, provided that "earned good time may be forfeited" if the prisoner violated institutional rules. Thus, the prior good-time scheme contemplated a prospective good-time entitlement, subject to later forfeiture for disciplinary infractions. In contrast, 18 U.S.C. § 3624(1)(b) establishes a system of annual performance reviews and credit awards, subject to the proration for a partial final year and award in the last six weeks.

No. 04-2410                                                        9

The district court applied the general rule of statutory construction that identical words used in different parts of the same statute are presumed to have the same meaning. *White*, 314 F. Supp. 2d at 838-39, citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995), and *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 990 (7th Cir. 2001). The rule is only a presumption, of course, and "the presumption is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *General Dynamics Land Sys., Inc. v. Cline*, 124 S.Ct. 1236, 1238 (2004) (quoting *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932)).

Sometimes when this canon of construction is invoked (or resisted), the apparent conflict is generated by uses of the same term in different parts of a large single piece of legislation. *See, e.g., Hotel Equities Corp. v. Comm'r of Internal Revenue*, 546 F.2d 725, 728 (7th Cir. 1976); *Matter of Merchant's Grain, Inc.*, 93 F.3d 1347, 1356 (7th Cir. 1996). This case presents the unusual situation of an apparent conflict in meaning of the same phrase within a single statute, indeed within a single statutory subsection, which might otherwise strengthen the presumption in favor of harmonization. But it is impossible to make sense of 28 U.S.C. § 3624 while giving the phrase "term of imprisonment" one meaning throughout. "Term of imprisonment" can only mean "sentence imposed" when used in subsection (a) and in the eligibility language of subsection (b); attributing the same meaning to the phrase when it is used in subsection (b) to describe how good-time credit is awarded is inconsistent with the retrospective year-end evaluation and award system the statute contemplates. We must conclude that 18 U.S.C. § 3624 is ambiguous in that it does not clearly indicate whether the fifty-four days' credit for good conduct for each year of the prisoner's "term of im-

prisonment" is based on the sentence imposed or the time served in prison. We defer to the Bureau's reasonable interpretation of the statute, which awards the credit for each year served in prison rather than each year of the sentence imposed.

One other circuit court has addressed this issue, and our decision today is consistent with its analysis. In *Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1271 (9th Cir. 2001), the Ninth Circuit concluded that § 3624 was ambiguous on the question of whether good-time credit was to be awarded on the basis of the sentence imposed or time served, and under *Chevron* deferred to the Bureau's interpretation. For the foregoing reasons, the order of the district court granting White's petition for a writ of habeas corpus under 28 U.S.C. § 2241 is REVERSED.

No. 04-2410                                                11

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*